**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DOMINIQUE GRICE, | : | Civil No. 1:24-CV-02087 |
| Plaintiff, | : | |
| v. | : | |
| SERGEANT COSGROVE, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

# MEMORANDUM

Before the court is a motion for summary judgment filed by the sole remaining defendant in this action, Sakia Bora, M.D. ("Defendant"). (Doc. 55.) Also pending are two motions by Plaintiff: (1) a motion seeking to withdraw his brief in opposition to the pending motion for summary judgment and close the case, Doc. 84, and (2) a motion seeking to have the previous motion stricken because he inaccurately believed he was being released, Doc. 85. The court will grant Plaintiff's second motion in part and withdraw rather than strike the motion seeking to withdraw his briefing and close the case. Because Dominque Grice ("Plaintiff") did not properly exhaust his administrative remedies, the court will grant Defendant's motion for summary judgment, grant judgment in favor of Defendant, and close the case.

## PROCEDURAL HISTORY AND BACKGROUND

Plaintiff, an inmate currently held at State Correctional Institution Mahanoy ("SCI-Mahanoy"), initiated this action by filing a complaint dated November 18, 2024. (Doc. 1.) The court received and docketed the complaint on December 4, 2024. (*Id.*) The complaint named the following three defendants: (1) Sergeant Cosgrove ("Cosgrove"), Supervisory Correctional Officer; (2) Heenan, Unit Manger (C-Unit); and (3) Sakia Bora ("Defendant"), Former Medical Director. (Doc. 1, pp. 1–2.)[1]

Plaintiff alleges that despite requesting lower bunk status, he was placed on the upper bunk in his cell. (*Id.*, p. 2.) He alleges that on March 12, 2023,[2] he fell while climbing down from the top bunk. (Docs. 56, 80.) Plaintiff alleges that he was transported to the hospital for an MRI, which showed that he had fractured his L2 vertebra during the fall and he was kept for observation. (Doc. 1.) Plaintiff alleges that on March 13, 2023, he was transferred back to SCI-Mahanoy and kept in the institution's infirmary. (*Id.*) Plaintiff alleges that the next morning, Defendant saw him and asked Plaintiff what he was told by the outside doctor. (*Id.*, p. 4.) Plaintiff alleges that he told Defendant that the doctor said he "would

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

[2] Both Defendant's and Plaintiff's statement of material facts acknowledge that the fall took place on March 12, 2023. (Docs. 56, 80.) However, Plaintiff's complaint states that the fall occurred on March 2, 2023. (Doc. 1, p. 3.) The court concludes that the date in the complaint is an error.

constant therapy and a follow-up MRI." (*Id.*) Plaintiff states that Defendant asked if it was difficult for him to walk and he told her yes and that he experienced debilitating pain when standing. (*Id.*) Plaintiff alleges that Defendant stated that he would be fine and prescribed medication which required him to go to the medication pill line four times a day. (*Id.*) Plaintiff states that he asked Defendant for a wheelchair, and she told him, "you don't need one." (*Id.*) Plaintiff alleges that Defendant never gave him a choice to remain in the infirmary or return to the housing unit, but discharged him from the infirmary without a wheelchair despite his reports of pain and difficulty walking and standing. (*Id.*) Plaintiff alleges that when he walked from the C-unit to the medical pill line, he was in so much pain he could not make the return trip to the housing unit. (*Id.*) Plaintiff states that he told staff that he could not walk back to the housing unit, staff notified medical personnel, and Plaintiff was given a wheelchair. (*Id.*)

The complaint contains additional facts concerning Cosgrove and Heenan, but these two defendants settled with Plaintiff following mediation in June of 2026. (Docs. 63, 64.) Therefore, the court need not reproduce the allegations regarding these defendants at this time.

On February 12, 2026, Defendant filed a suggestion of bankruptcy regarding her employer Wellpath, LLC. (Doc. 13.) On February 13, 2025, the court stayed the action. (Doc. 15.) Following the Chapter 11 Plan in Wellpath, LLC's

bankruptcy case being confirmed on May 1, 2025, the court lifted the stay and directed the parties to answer the complaint. (Doc. 23.) On June 20, 2025, Defendant filed an answer. (Doc. 28.)

Defendant filed the instant motion for summary judgment on March 2, 2026. (Doc. 55.) Accompanying the motion are a statement of facts and brief in support. (Docs. 56, 57.) Following a brief stay for mediation, Plaintiff filed a brief in opposition and response to the statement of facts. (Docs. 80, 81.) Defendant filed a response to the response to the statement of facts and a reply brief. (Docs. 82, 83.)

On October 26, 2026, the court received and docketed Plaintiff's motion to withdraw his brief in opposition to the pending motion for summary judgment and request closure of the case. (Doc. 84.) That same date, the court received and docketed Plaintiff's motion to strike the previous motion and allow the case to proceed. (Doc. 85.)

The court will grant Plaintiff's second motion in part and, rather than striking the filing, will simply deem his motion seeking the withdrawal of his brief in opposition to Defendant's motion for summary judgment as withdrawn. The court will now address the pending motion for summary judgment.

## Jurisdiction and Venue

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Mahanoy in Schuylkill County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

## Summary Judgment Standard

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020), (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable

inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of his pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp.*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Material Facts Concerning Administrative Exhaustion.

#### 1. Defendant's Statement of Facts

In her statement of material facts, Defendant asserts that on March 19, 2023, Plaintiff submitted Grievance No. 1026892, in which he complains that on March 14, 2023, Defendant released him from the infirmary and forced him to walk to the medication pill line despite his reports to her that walking resulted in pain. (Doc. 56, p. 6; Doc. 55-3, p. 5.) Defendant's statement of facts further states that the grievance was initially denied on April 24, 2023, and that Plaintiff completed his appeal with the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") on August 22, 2023. (Doc. 56, p. 6.)

As evidence in support of her motion for summary judgment, Defendant submitted the March 19, 2023 grievance. (Doc. 55-3, p. 5.) The grievance demonstrates that it was received by the Facility Grievance Coordinator on March

31, 2023. (*Id.*) Defendant also attached the Initial Review Response dated April 24, 2023, denying the grievance and finding that "[t]he care you are receiving is appropriate for your condition." (*Id.*, pp. 6–7.) Defendant submitted Plaintiff's Inmate Appeal to Facility Manager dated May 12, 2023, and the denial of that appeal dated June 6, 2023. (*Id.*, pp. 8–9.)

Defendant included Plaintiff's final appeal of Grievance No. 1026892, dated July 3, 2023. (*Id.*, p. 2.) This final appeal was dismissed, and under the Rationale section provides two reasons: (1) because the initial grievance was not submitted within fifteen working days after the events upon which claims are based; and (2) because Plaintiff did "not provide this Office with required and/or legible documentation for proper review." (*Id.*, p. 4.) However, in the Response section for the dismissal, it states that Plaintiff's final appeal needed to be postmarked by June 28, 2023, and it was not postmarked until July 7, 2023 and states that "this office has not received the required documentation for a proper appeal to final review; specifically, a copy of our initial grievance, the initial review response, your appeal to the Facility Manager or the Facility Manger's response." (*Id.*, p. 4.) Defendant also attached correspondence from SOIGA dated October 24, 2023, acknowledging that Plaintiff submitted the outstanding documentation, finding that "[s]ubmitting these documents now does not change the response you previously received," and noting that the dismissal stands. (*Id.*, p. 3.)

**2. Plaintiff's Statement of Facts**

Plaintiff filed a statement challenging Defendant's statement of facts. (Doc. 80.) Plaintiff agrees that he filed the grievance and the grievance was dismissed at the final level, but states that he provided that office with legible copies of the grievance within fifteen days of receiving the Facility Manger's response. (Doc. 80, p. 3.)

**B. Plaintiff Did Not Exhaust His Administrative Remedies.**

Defendant seeks summary judgment under the argument that Plaintiff did not exhaust his administrative remedies prior to filing his complaint in this court. (Doc. 57, pp. 11–15.) The court agrees.

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e et seq., requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006). However, there are situations in which a grievance procedure may be rendered "unavailable" to an inmate, such as when a prison official thwarts an inmate's ability to use it, *Ross*, 578 U.S. at 643–44, when intimidation by means of "serious threats of

retaliation and bodily harm" prevent an inmate from filing, *Rinaldi v. United States*, 904 F.3d 257, 266–67 (3d Cir. 2018), or when a prison has "rendered its administrative remedies unavailable . . . when it failed to timely (by its own procedural rules) respond to [an inmate's] grievance and then repeatedly ignored his follow-up requests for a decision on his claim," *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

Under Third Circuit precedent, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010)); *see also Drippe*, 604 F.3d at 781 ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to.") (quoting *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Sept. 12, 2008), and *abrogated by Perttu v. Richards*, 605 U.S. 460 (2025)); *cf. Wilkerson v. United States*, No. CIV.A. 3:13-1499, 2014 WL 1653249, at *9 (M.D. Pa. Apr. 24, 2014) ("[I]f there is a dispute of material fact, the court should conduct a plenary trial on the contested facts prior to making [an exhaustion of administrative remedies] determination."). "Although the availability of administrative remedies to a

prisoner is a question of law, it necessarily involves a factual inquiry." *Small*, 728 F.3d at 271 (citations omitted).

DC-ADM 804 describes the administrative remedies for inmate grievances. DC-ADM 804 defines a "grievance" as "[a] formal written complaint by an inmate related to a problem encountered during the course of his/her confinement." Commonwealth of Pa., Dep't of Corr., inmate Grievance Sys., Policy No. DC-ADM 804 ("DC-ADM 804"), Glossary of Terms, available at: https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf.

DC-ADM 804 provides a three-step grievance process that must be completed to properly exhaust administrative remedies in most cases. *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2000), *aff'd,* 532 U.S. 731 (2001). If informal resolution attempts do not resolve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based." DC-ADM 804 § 1(A)(3)–(5). An adverse decision by the Grievance Coordinator may be appealed to the Facility Manager within 15 working days of the initial-review response or rejection. DC-ADM 804 § 2(A)(1). Finally, the decision of the Facility Manager may be appealed to "Final Review" with the

SOIGA, and again must be submitted within 15 working days of the date of the Facility Manager's decision. DC-ADM 804 § 2(B)(1).

DC-ADM 804 has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court." DC-ADM 804 § 1(A)(11).

Defendant argues that Plaintiff's final appeal was dismissed for not following proper procedure, resulting in Plaintiff not exhausting his administrative remedies. (Doc. 57, p. 15.) In response, Plaintiff argues that delays encountered while working his way through the grievance process resulted in the dismissal. He states in his brief in support that he originally placed the grievance in the grievance lockbox on March 19, 2023, that the grievance was not given a tracking number until March 31, 2023, that the initial response was not dated, that he did not receive the initial response until April 25, 2023, that he placed his appeal to the Facility Manager in the grievance lockbox on May 12, 2023, that the grievance was stamped received by the Facility Manager on May 17, 2023, that the Facility

Manager's response was dated June 6, 2023, that he did not receive the Facility Manger's response until June 12, 2023, that he placed the appeal for Final Review to SOIGA for outgoing mail on July 3, 2023, and it was marked received by that office on July 11, 2023. (Doc. 81, p. 4.) He further alleges that Heenan was responsible for retrieval of the grievances and forwarding the grievances to the correct individuals and he delayed in the retrieval of the grievances from the lockbox. (*Id.*, p. 5.) Plaintiff also argues that the SOIGA's dismissal of his final appeal is erroneous because he received the Facility Manger's response six days after it was issued, on June 12, 2023 and he placed it in the mailbox on July 3, 2023. (*Id.*, pp. 5–6.) In support of his assertions, Plaintiff submitted a declaration stating that he submitted the final appeal "within 15 working days as required by DC-ADM 804," and that he placed the final appeal in the mail on July 3, 2023. (Doc. 81-1, p. 3.)

Plaintiff's argument makes two errors. First, while Defendant has submitted the administrative record as evidence in support of the motion for summary judgment, including the June 6, 2023 Facility Manager's response, Plaintiff has submitting nothing in support of his argument that he did not receive the Facility Manger's response until June 12, 2023. The non-moving party must oppose the motion for summary judgment, and in doing so "'may not rest upon the mere allegations or denials of his pleadings' but, instead, 'must set forth specific facts

showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89. Plaintiff's declaration does not address what date he received the Facility Manager's response. (Doc. 81-1.) Therefore, there is no evidence in the record to support his assertion that there was a delay in receiving the Facility Manager's response.

Second, Plaintiff mistakes the policy in DC-ADM 804. He asserts that he had fifteen working days from the date he received the Facility Manager's response. This is not accurate. DC-ADM 804 clearly states:

> Any inmate who is dissatisfied with the disposition of an appeal from the Facility Manager/designee may submit an Inmate Appeal to Final Review (Attachment 2-E) within 15 working days *from the date of the Facility Manager/designee's decision.* Only issues raised in the initial grievance and/or appealed to the Facility Manager may be appealed to Final Review.

DC-ADM 804 § 2(B)(1)(b); (Doc. 55-5, p. 18) (*emphasis added*). Therefore, regardless of the alleged (but unsupported) six-day delay in receiving the Facility Manager's response, Plaintiff was required to mail his final appeal by June 28, 2023 (fifteen working days after June 6, 2023). Therefore, the July 3, 2023 placement of the final appeal in the outgoing mailbox is untimely. *See Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011) (noting that "[t]he federal 'prisoner mailboxrule' provides that a document is deemed filed on the date it is given to prison officials for mailing (citing *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir.

1998)). A prisoner's failure to comply with the procedural and substantive requirements of the grievance policy results in procedural default, thereby precluding an action in federal court. *See Woodford*, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"). Therefore, Plaintiff did not exhaustion his administrative remedies. The court will grant Defendant's motion for summary judgment and close the case.

## CONCLUSION

For the reasons discussed above, the court will grant Plaintiff's motion to strike his pending motion to withdraw his brief in opposition of Defendant's motion for summary judgment in part and deem the motion to withdraw as withdrawn. After considering all the briefing on Defendant's motion for summary judgment, the court will grant the motion, enter judgment in favor of Defendant, and close the case.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: November 4, 2026